ANNE M. DORSHIMER, Bar No. 50363
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: 206.624.0900

WENDY OLSON (Admitted *pro hac vice*)
Stoel Rives LLP
101 S. Capital Boulevard, Suite 1900
Boise, ID 83702
Telephone: 208.389.9000

THOMAS H. BARNARD (Admitted *pro hac vice)*
Baker Donelson
100 Light Street, 19th Floor
Baltimore, MD 21202
Telephone: 410.862.1185

*Attorneys for Defendant*
*MultiCare Health System*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA; STATE OF WASHINGTON, ex rel. DR. DEANETTE L. PALMER, PHD, and RICHARD PALMER, as RELATORS, <br><br> Plaintiffs, <br><br> v. <br><br> MULTICARE HEALTH SYSTEM dba MULTICARE DEACONESS HOSPITAL and MULTICARE ROCKWOOD CLINIC NEUROSURGERY, <br><br> Defendant. | Case No. 2:22-cv-00068-SAB <br><br> **STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56** |

Pursuant to Federal Rule of Civil Procedure 56 and Local Rules 7 and 56,

MultiCare Health System ("MultiCare") submits this Statement of Material Facts

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 1

123221794.1 0023502-00322

Not In Dispute together with and in support of its Motion for Summary Judgment on the United States' and the State of Washington's Complaint in Intervention (the "Complaint," ECF No. 26). Each of the Exhibits cited herein are attached to the concurrently-filed Declaration of Anne M. Dorshimer:

1. Based in Tacoma, MultiCare Health System is an independently-owned non-profit organization, governed by a local board of directors, which cares for patients across the Puget Sound and the Inland Northwest. *See* ECF No. 26 at ¶ 15.

2. MultiCare operates Deaconess Medical Center ("Deaconess") in Spokane, Washington. ECF No. 26 at ¶¶ 15, 49.

3. MultiCare's operational values include Respect, Integrity, Stewardship, Collaboration, Kindness, and Excellence, the latter of which embodies the organization's intent to hold itself accountable to excel in quality of care, personal competent, and operational performance. ECF No. 26 at ¶ 50.

## I. MultiCare Hires Dr. Dreyer After Completing Its Routine And Systematic Hiring And Credentialing Process

### A. Dr. Dreyer resigns from Providence

4. In July 2013, Jason A. Dreyer, DO ("Dr. Dreyer") was hired at Providence St. Mary Medical Center ("Providence"), a hospital in Walla Walla, Washington. ECF No. 26 at ¶¶ 66-67.

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 2

123221794.1 0023502-00322

5. On May 22, 2018, Dr. Dreyer was placed on administrative leave at Providence. ECF No. 26 at ¶ 73.

6. On November 13, 2018, Dr. Dreyer effectively resigned from Providence. ECF No. 26 at ¶ 73.

7. Providence has admitted that, as Dr. Dreyer's employer, it did not report Dr. Dreyer to the National Practitioner Data Bank ("NPDB") or the Washington State Department of Health (the "DOH"). ECF No. 26 at ¶ 73; Ex. 36 at 3(E).

**B. Dr. Dreyer applies to join MultiCare at Deaconess**

8. In early 2019, MultiCare was recruiting additional neurosurgeons to adequately service the patient volume, including providing on call emergency neurosurgeon coverage, as well as to expand its neurosurgery practice and to establish a neuroscience institute. ECF No. 26 at ¶¶ 88-89. Recruiting was extremely difficult as neurosurgeons are in high demand and typically want to work in larger metropolitan areas. ECF No. 26 at ¶ 89.

9. MultiCare effectively formed a selection and hiring committee for the neurosurgeon position, which included MultiCare's Medical Director for Surgical Services, Dr. John Demakas, MultiCare's Regional Administrator, Mark Donaldson, and MultiCare's President of Deaconess Hospital, Laureen Driscoll. ECF No. 26 at ¶ 89.

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 3

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

123221794.1 0023502-00322

10. On March 16, 2019, Dr. Dreyer contacted MultiCare via email regarding potential employment. ECF No. 26 at ¶ 88; Ex. 3 at 1.

11. At the time he presented to MultiCare for employment, Dr. Dreyer had been board-certified by the American Board of Osteopathic Surgery since 2014. Ex. 4 at 3, 5. After time serving in the Army reserves, he earned a master's degree in hospital administration and then his Doctor of Osteopathic Medicine degree from Kirksville College of Osteopathic Medicine in Kirksville, Missouri in 2007. Ex. 4 at 3. He completed a six-year neurosurgery residency at Michigan State University in 2013. Ex. 4 at 3-4. As of February 12, 2013, the State of Washington issued Dr. Dreyer a license to practice medicine, which had remained active. *See also* Ex. 5 at ¶ 1.1.

12. After March 16, 2019, MultiCare considered Dr. Dreyer for employment as a neurosurgeon, which included obtaining information from Dr. Dreyer and his former employers, references, and other pertinent sources. *See* ECF No. 26 at ¶ 53; *see infra* section C.

### C. Dr. Dreyer is vetted by MultiCare prior to hiring

13. On March 28, 2019, Mr. Donaldson emailed Dr. Demakas, stating that he met with a Globus sales representative, who told Donaldson on March 27, 2019 that "they spoke very highly of Dr. Dreyer and said he has been exonerated of

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 4

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

123221794.1 0023502-00322

the issues in Walla Walla." *See* ECF No. 26 at ¶ 92; Ex. 6 at 1.

14. On April 3, 2019, Mr. Donaldson emailed Ms. Driscoll and Dr. Demakas regarding, among others, interviews for the neurosurgeon candidates. *See* Ex. 7 at 1. The email states, in part: "There are some red flags on [Dr. Dreyer's] practice style and relationships that we need to clarify when he comes for an interview." Ex. 7 at 1; ECF No. 26 at ¶ 95.

15. On or around April 10, 2019, MultiCare conducted a full day in-person interview of Dr. Dreyer. *See* ECF No. 26 at ¶ 97; Ex. 8 at 1.

16. On April 12, 2019, MultiCare extended an offer of employment to Dr. Dreyer. ECF No. 26 at ¶ 98.

17. On May 3, 2019, MultiCare's Spine Center of Excellence (COE) Provider Team met, and a draft of the meeting minutes that day reflected: "Dr. Dreyer: Work horse. May need to advise him on what type of surgeries are appropriate and what is not tolerated." ECF No. 26 at ¶ 100.

18. Later on May 3, 2019, Donaldson edited the meeting minutes "to make sure we don't have disparaging remarks that are discoverable by either [Dr. Dreyer or Dr. Teff] after they arrive." Ex. 9 at 2; *see* ECF No. 26 at ¶ 100.

19. On May 3, 2019, Dr. Dreyer formally signed an employment agreement with MultiCare. ECF No. 26 at ¶ 100; Ex. 10 at 1.

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 5

123221794.1 0023502-00322

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

20. On May 3, 2019, in his responses on the Washington Practitioner Application, Dr. Dreyer answer and verified "**No**" in response to the question "Have you ever been subject to review, challenges, and/or disciplinary action, formal or informal, by an ethics committee, licensing board, medical disciplinary board, professional association or education/training institution?" Composite Ex. 11 at 14.

21. On May 20, 2019, MultiCare received a peer reference for Dr. Dreyer. Reviewer indicated a "focused review" was conducted in response to another staff member complaint. ECF No. 26 at ¶ 102; Comp. Ex. 11 at 47. The peer reference elaborated: "No significant issues were identified by medical staff and the only recommendation was that all elective neurosurgery patients take part in a multidisciplinary evaluation preoperatively. This is a common feature of many of our service lines." ECF No. 26 at ¶ 102; Comp. Ex. 11 at 47.

22. Prior to May 31, 2019, MultiCare engaged in its routine hiring and credentialing process with respect to Dr. Dreyer, including but not limited to the following acts that are documented in the hiring and credentialing records in Composite Exhibit 11:

   a. verifying Dr. Dreyer's required education, training, and board certifications, and licensure dates, *see* Comp. Ex. 11 at 34-44, 74, 81,

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 6

**STOEL RIVES** LLP
ATTORNEYS
**600 University Street, Suite 3600, Seattle, WA  98101**
*Telephone 206.624.0900*

123221794.1 0023502-00322

85-107, 111;

b.   verifying Dr. Dreyer's employment dates and prior healthcare entity/facility affiliations, *see* Comp. Ex. 11 at 63-65, 184;

c.   requesting verification from Providence of Dr. Dreyer's clinical privileges and receiving in response a written statement from Providence representing that "no adverse professional review action as defined in the Health Care Quality Improvement Act has been taken regarding this practitioner [meaning] that there has been no reduction, restriction, suspension, revocation, denial, or involuntary relinquishment of the practitioner's staff membership or clinical privileges," Comp. Ex. 11 at 62;

d.   searching the National Practitioner Data Bank ("NPDB") on May 16, 2019 and May 31, 2019, both of which turned up "no reports" for any category, which included **no** Medical Malpractice Payment Reports, State Licensure actions, Exclusion or Debarment Actions, Government Administrative Actions, Clinical Privilege Actions, Health Plan Actions, Professional Society Actions, DEA/Federal Licensure Actions, Judgment or Conviction Reports, and Peer Review Organization Actions, *see* Comp. Ex. 11 at 130-132;

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 7

e. obtaining completed peer evaluation forms from four peer references who worked with Dr. Dreyer, none of which noted any significant concerns, and each of which rated Dr. Dreyer as "superior" in most categories and "recommend highly without reservation," *see* Comp. Ex. 11 at 45-60;

f. obtaining a separate Washington State Criminal Conviction History Report and Washington State Child/Adult Abuse Report, confirming no criminal or registry reports, Comp. Ex. 11 at 66-67;

g. confirming, though a query of the OIG List of Excluded Individuals and Entities List, that Dr. Dreyer was not an excluded individual, Comp. Ex. 11 at 116-120;

h. collecting a completed copy of Dr. Dreyer's Washington Practitioner Application, the standard credentialing application form mandated by Washington law, Comp. Ex. 11 at 4-15;

i. obtaining a current Certificate of Liability Insurance, including a claims history report with no reported claims, Comp. Ex. 11 at 121-129; and

j. conducting initial interviews between Dr. Dreyer and various MultiCare leaders and fellow MultiCare neurosurgeons. *See*, *e.g.*, Ex. 8 at 1.

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 8

**D. An existing DOH complaint was not revealed to MultiCare during hiring and credentialing processes**

23. On March 4, 2019, a complaint was submitted to the DOH about 11 of Dr. Dreyer's surgeries at Providence. ECF No. 26 at ¶ 75.

24. DOH notified Dr. Dreyer of the complaint on May 6, 2019. *See* ECF No. 26 at ¶¶ 77, 148; Ex. 12 at 1.

25. DOH sent its May 6 notice that it had received a complaint to Dr. Dreyer's former address at Providence. Ex. 12 at 1. However, additional information about the complaint, including the complainant, the patients, the care in question, and a copy of the complaint itself, was not provided to Dr. Dreyer until months later. *See id.;* Ex. 4 at 1-2.

26. Dr. Dreyer was represented in the DOH matter by his own attorney. Ex. 4 at 1, 9.

27. The DOH investigation was not disclosed to MultiCare, by Dr. Dreyer or anyone else, during the hiring or credentialing process at MultiCare. *See supra* ¶¶ 8-25.

II.    **Dr. Dreyer's Practice At MultiCare**

      **A. MultiCare performs standard peer reviews of Dr. Dreyer's**

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 9

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

123221794.1 0023502-00322

**surgeries**

28. On July 23, 2019, Dr. Dreyer was granted clinical privileges at MultiCare Deaconess Hospital and began seeing patients. ECF No. 26 at ¶ 104; Ex. 13 at 1.

29. Dr. Dreyer, like any new physician joining the medical staff at Deaconess, underwent a focused provider review of his cases, which turned up no issues. Ex. 11 at 192-94; Ex. 13 at 1; Ex. 14 at ¶¶ 10-11.

30. On August 28, 2019, Dr. Dreyer operated on Patient M.W., which was M.W.'s second spinal surgery at MultiCare but Dr. Dreyer's first surgery on M.W. ECF No. 26 at ¶¶ 173, 176; Declaration of Joel D. Winer, M.D. (Ex. 2) at ¶ 10. His second surgery on M.W. was February 24, 2020. ECF No. 26 at ¶ 177; Ex. 2 at ¶ 10.

## B. Consideration given to concerns of two physician assistants

31. On around September 19, 2019, Leigh Gilliver, a Physician Assistant at MultiCare, raised his concern that Dr. Dreyer was performing a higher volume of complex surgeries than the neurosurgeons with whom Mr. Gilliver previously worked. *See* ECF No. 26 at ¶¶ 114, 117, 119. Mr. Gilliver was not involved with Dr. Dreyer's patients preoperatively or with the preoperative or interoperative planning of Dr. Dreyer's surgeries. Ex. 15 at 29:22-25, 55:5-

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 10

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

123221794.1 0023502-00322

10, 77:21-78:11, 135:23-25, 136:1-4.

32. On September 23, 2019, Mr. Donaldson and Dr. Demakas held a follow-up meeting with Mr. Gilliver and asked him to identify four surgeries for which he had concerns, which they would review, and he did. ECF No. 26 at ¶ 122; Ex. 15 at 47:5-20, 87:5-19, 114:24-117:22. Mr. Gilliver testified both Mr. Donaldson and Dr. Demakas were empathic and took his concerns seriously. Ex. 15 at 118:9-24.

33. About two weeks later, in early October 2019, Mr. Gilliver met with numerous MultiCare personnel to discuss his concerns, including Dr. Dreyer, Mr. Donaldson, Dr. Demakas, and neurosurgeons Dr. Heller and Dr. Morgan, among others. ECF No. 26 at ¶ 123; Ex. 15 at 127:11-132:14.

34. In late 2019, another Physician Assistant at MultiCare, Josiah Newton, went to Dr. Demakas even prior to assisting Dr. Dreyer because of what he had heard from Leigh Gilliver, and then based on "what on paper seeing []how aggressive Dr. Dreyer was" compared to a few other neurosurgeons with whom Mr. Newton had worked. ECF No. 26 at ¶ 124; Ex. 16 at 31:10-34:10.

35. Mr. Newton had no pre-operative or post-operative involvement with Dr. Dreyer's patients. Ex. 16 at 88:4-20, 115:23-116:4.

36. Dr. Demakas told Mr. Newton that that MultiCare would take appropriate

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 11

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

steps to address J.N.'s concern for the safety of Dr. Dreyer's patients. ECF No. 26 at ¶ 128.

### C. A sealed qui tam against Providence is filed and Dr. Dreyer responds to the DOH

37. On January 10, 2020, Dr. David Yam, M.D. ("Dr. Yam") filed a *qui tam* action in the Eastern District of Washington, on behalf of the United States and the State of Washington, against Providence (alone) alleging Providence submitted false claims with respect to Dr. Dreyer's patients and therefore violated the False Claims Act. Ex. 17.

38. The Yam *qui tam* case was sealed in its entirety, Ex. 18, until September 21, 2021, when it was partially unsealed for the limited purpose of disclosing the existence of the case only to Providence and its counsel, Ex. 19.

39. On February 4, 2020, unbeknownst to MultiCare, Dr. Dreyer provided a response to the DOH's May 6, 2019 notice of a complaint, through his attorney. *See* ECF No. 26 at ¶ 80; *see generally* Ex. 4. His response included support from two highly-qualified physicians (Dr. Patrick Hsieh, the Director of the Neurosurgery Spine Program at the University of Southern California, and Dr. Jerome Barakos, a board certified neuroradiologist at California Pacific Medical Center with nearly 28 years of experience), who both opined Dr. Dreyer's care was reasonable and appropriate at all times. ECF No. 26 at

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 12

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

123221794.1 0023502-00322

¶ 80; Ex. 4 at 7.

### III. The DOJ Notifies MultiCare That They Are Reviewing Dr. Dreyer's Surgeries Performed While At Providence But Does Not Notify MultiCare About The DOH Investigation

40. On February 15, 2020, the United States Department of Justice, acting through Assistant U.S. Attorneys Tyler Tornabene and Daniel Fruchter (collectively, the "DOJ"), sent an email to an attorney at a private firm who had served as outside counsel for MultiCare. *See* ECF No. 26 at ¶ 131; Ex. 1 at 2.

41. The email did not copy any employee of MultiCare. Ex. 1 at 2.

42. The opening sentences of the February 15 email stated that the DOJ had "opened an investigation into Dr. Jason Dreyer," which was "ongoing," "and in fact [wa]s at a very early stage," and had given the DOJ "great concern for the safety of any current patients of Dr. Dreyer." Ex. 1 at 2; *see* ECF No. 26 at ¶ 132.

43. The email described the scope of the DOJ's investigation: "Dr. Dreyer is a target of our ongoing investigation for actions ***he took during his previous employment with Providence Health in Walla Walla***, which we understand ended in 2018." Ex. 1 at 2 (emphasis added); *see* ECF No. 26 at ¶ 131. Their concerns were based on Dr. Dreyer's conduct "for approximately five years prior to his employment or association with [MultiCare] Deaconess." Ex. 1 at

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 13

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

123221794.1 0023502-00322

2.; *see* ECF No. 26 at ¶¶ 131, 133. Specifically, the concerns were of medical misconduct, which they said involved unnecessary surgeries that "apparently" or "potentially" resulted in severe harm. Ex. 1 at 2.

44.    The DOJ's email explicitly informed MultiCare:

> Currently, based solely on the evidence we have to date, [MultiCare] *Deaconess it is not a target of our investigation and we currently have no direct evidence, one way or the other, of Dr. Dreyer's actions while working at Deaconess*.

Ex. 1 at 2 (emphasis added); *see* ECF No. 26 at ¶¶ 131-32.

45.    The email further stated that "the credible evidence of unnecessary surgeries, the resulting patient harm, and evidence of Dr. Dreyer creating false and fraudulent medical records" caused the DOJ to provide MultiCare with this information, but added that "*our ongoing investigation has not reached any final conclusions*." Ex. 1 at 2 (emphasis added); *see* ECF No. 26 at ¶ 132.

46.    The email advises that:

> Further, *the attached materials are not our conclusions, nor are they the sum total of all information we possess*, but these materials are being provided to you as they do contain summaries of *some of the most concerning evidence and allegations* that appear credible and which we are vigorously investigating.

Ex. 1 at 2 (emphasis added).

47.    The email stated that MultiCare may "share with the appropriate persons at Deaconess" on a "need to know" basis:

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 14

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

123221794.1 0023502-00322

Further, we request that [MultiCare] Deaconess not distribute this information, in any manner whatsoever, beyond Deaconess and beyond those persons at Deaconess or within your firm who need to have some or all of this information to ensure patient safety. ***Any disclosure beyond those who need to know at Deaconess or within your firm could seriously prejudice our ongoing investigation.***

Ex. 1 at 2 (emphasis added).

48. The DOJ's email did not specifically request that MultiCare respond to or contact the DOJ. *See* Ex. 1 at 2.

49. The DOJ's email did not request or demand that MultiCare take any actions with respect to Dr. Dreyer, or report any such actions to the DOJ. *See* Ex. 1 at 2.

50. All of the materials attached to that email concerned Dr. Dreyer's actions during his previous employment with Providence in Walla Walla. *See* Ex. 1 at 2; *see* ECF No. 26 at ¶ 133.

51. On February 17, 2020, outside counsel confirmed by reply email receipt of the DOJ's February 15 email that she had reached out to Dayle Hosek (MultiCare Director of Risk Management), the "correct contact" for MultiCare. Ex. 1 at 2; *see* ECF No. 26 at ¶ 134.

52. On Friday, February 21, 2020, AUSA Tornabene replied by email to the outside counsel to "touch base because they had not heard anything" since her

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 15

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

123221794.1 0023502-00322

February 17 response. Ex. 1 at 1. The email continued:

> ***While Deaconess is under no obligation whatsoever to discuss anything with us***, we thought it would be best to reach out regarding the current status of Dr. Dreyer at Deaconess and his current ability through Deaconess to perform surgeries. ***Again, Deaconess is under no obligation to provide us any information at this time, however as we assess other/additional avenues to address any immediate patient safety concerns we thought it best to reach out.***

Ex. 1 at 1 (emphasis added).

53. That same day, the outside counsel replied that her MultiCare client contact said "[i]t is being discussed with exec on Monday" (which was February 24, 2020) and "assured [her] they are taking it very seriously." Ex. 1 at 1.

## IV. MultiCare Voluntarily Initiates An Investigation, Including Instituting A SBAR And Additional Reviews Of Dr. Dreyer's Surgeries

54. On Monday, February 24, 2020, MultiCare executives met to discuss the information in the DOJ's February 15 email. ECF No. 26 at ¶ 134.

55. On February 25, 2020, within one day of the executives' meeting, MultiCare's Chief Medical Officer, Dr. Geoff Swanson, created a confidential Situation, Background, Assessment, and Recommendation analysis ("SBAR"), describing the situation as concerning "quality and billing issues involving the previous practice of neurosurgeon Jason Dreyer, DO." ECF No. 26 at ¶ 135; Ex. 20.

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 16

56. The SBAR summarizes the background as follows:

> On February 24, RWC and MultiCare Inland Northwest (INW) leadership was presented information received by the INW general counsel alleging Dr. Dreyer, at a previous practice site; 1) exhibited questionable surgical decision-making, 2) excessively utilized surgical repair and instrumentation and 3) was involved in fraudulent billing practices. The quality of this evidence was not substantiated, nor was the information sourced.

ECF No. 26 at ¶¶ 136-37; Ex. 20.

57. The SBAR further states, as part of the assessment:

> It is unclear at this time if the information presented or the implied investigations are valid or will be vetted. However, in this period, the obligation of patient safety takes precedence over other considerations until this matter is fully investigated and an objective analysis is completed by regulatory agencies and MultiCare Health System.

ECF No. 26 at ¶ 138; Ex. 20.

58. The SBAR set forth four recommended actions: (1) to meet with Dr. Dreyer to determine if he adequately disclosed these issues, if known to him, or to make him aware, if unknown; (2) immediately implement a peer review of all planned surgical services, including authority to cancel planned surgeries if the peer reviewer deems it warranted; (3) initiate, "as soon as practical," "an independent objective review of at least [10] major surgical cases of Dr. Dreyer's since his employment at [MultiCare]"; and (4) "proceed with further discovery of information if available." ECF No. 26 at ¶¶ 139-40, 142-43; Ex.

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 17

20.

59. On February 26, 2020, Dr. Dreyer met with Dr. Swanson, Dr. Demakas (MultiCare's Medical Director for Surgical Services), and Mel Hoadley (a MultiCare Human Resources employee) to discuss the DOJ's investigation into Dr. Dreyer's conduct while at Providence. ECF No. 26 at ¶ 144; *see* Ex. 21 at 2.

60. During that meeting, Dr. Dreyer represented that while he was aware of an inquiry that occurred while he worked at Providence, it was a "board inquiry that Providence initiated concerning neurological services across their system," that after an "external review … no material findings were disclosed" to him, and that he "considered the matter closed and had received no notice from the State of Washington," which Dr. Dreyer verified with his attorney. ECF No. 26 at ¶¶ 144-45; Ex. 21 at 2.

61. In response to MultiCare's specific question whether he had been notified by the Washington Medical Commission of any investigation, Dr. Dreyer responded that he had not. ECF No. 26 at ¶¶ 144-45; Ex. 21 at 2.

62. MultiCare advised Dr. Dreyer during that meeting that, "as a precautionary measure," "[Dr. Demakas] would review 100% of elective surgical cases from a prospective perspective and 100% post-surgical reviews of both elective and

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 18

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

123221794.1 0023502-00322

emergent cases" and would also obtain external review of some surgeries he had performed at MultiCare. Ex. 21 at 2.

63. Dr. Swanson then met with Dr. Demakas to discuss the concerns and the plan for peer oversight of Dr. Dreyer's surgeries, though he did not disclose to Dr. Demakas a copy of the DOJ's "notice email." *See* ECF No. 26 at ¶ 140.

64. Immediately following the meeting with Dr. Swanson, Dr. Demakas, who at the time was a licensed neurosurgeon, a Fellow of the American Association of Neurological Surgeons, and the Medical Director for Surgical Services at MultiCare Rockwood Clinic, began peer reviewing all pre-surgical elective cases and all post-surgical cases, both elective and urgent procedures, planned or performed by Dr. Dreyer. *See* ECF No. 26 at ¶¶ 140-41; Ex. 14 at ¶¶ 11-12.

65. On March 2, 2020, Dr. Swanson, with input from Dr. Demakas and MultiCare leadership, formalized a "Jason Dreyer, DO Clinical Review Form" for the pre-and post-operative review of elective cases, which he shared via email with Dr. Demakas, Dr. Dreyer, and others. *See* Ex. 22.

66. The "Jason Dreyer, DO Clinical Review Form" includes a section titled "Imaging Summary" for the peer reviewer's review of and summary of the patient's imaging. Ex. 22 at 3.

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 19

67. Dr. Swanson, in the March 2 email, explains that the Form is "only applicable to elective cases as we obviously would not want to inappropriately slow emergent cases," but "I think we should complete the post-surgical review for emergent cases as well." Ex. 22 at 1.

68. Dr. Demakas used the "Jason Dreyer, DO Clinical Review Form" for his pre- and post-operative reviews of Dr. Dreyer's elective surgeries. *See, e.g.*, Comp. Ex. 23.

69. On March 5, 2020, Dr. Swanson emailed Dr. Dreyer to document their discussions during their February 26, 2020 meeting. Ex. 21 at 2.

70. In response, Dr. Dreyer emailed Dr. Swanson "[j]ust to clarify" that the Providence review was not the result of any "event relative to my employment there" and that he voluntarily resigned, which he "discussed with Dr. Demakas prior to [] getting hired at MultiCare." Ex. 21 at 1.  He further stated,

> There was a 'query' by the osteopathic medical board regarding a complaint made by Dr. Fewel [another Providence neurosurgeon] … . He would see some second opinions of mine when a patient was not doing well and I wanted another experienced neurosurgical opinion. … After I was hired here, but before I actually started, Providence received a complaint about me …. ***The osteopathic medical board sent a letter to Providence and I did not find out about it until after I started here. Providence hired an attorney to help me review the cases and respond to the "query." He assured me that there was no "investigation."*** … [H]e engaged an outside neurosurgeon and neuroradiologist from academic centers in California. … Both

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 20

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

physicians said that my care fit with the standard of care they would expect to see at their institutions. The report was submitted 2/4/20 and I have yet to hear back.

*Id.* (emphasis added); ECF No. 26 at ¶ 147.

71. Dr. Dreyer's email to Dr. Swanson added, "I certainly have not heard anything about the US attorney's office. My lawyer from Providence has not either." Ex. 21 at 1.

72. Dr. Swanson, via email on the evening of March 5, thanked Dr. Dreyer for his response. Ex. 21 at 1. Having been copied on this email, Dr. Demakas received a complete copy of Dr. Swanson and Dr. Dreyer's March 5 email chain. Ex. 21 at 1.

73. From March 18, 2020 to May 18, 2020, a statewide shutdown of all elective procedures took effect, including Dr. Dreyer's elective surgeries, due to the COVID-19 pandemic. *See* Comp. Ex. 24.

**V.    Dr. Dreyer Continues To Operate At MultiCare With Oversight**

74. After February 27, 2020, Dr. Demakas reviewed dozens of Dr. Dreyer's surgeries. *See* Comp. Ex. 23; *see also* Ex. 14 at ¶¶ 11-12.

75. On August 2 and 3, 2020, Dr. Dreyer made diagnoses and performed urgent surgery on Patient T.K. ECF No. 26 at ¶¶ 198-99; Ex. 2 at ¶ 8.

76. On September 16, 2020, Dr. Dreyer performed surgery on Patient D.P. ECF

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 21

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

123221794.1 0023502-00322

No. 26 at ¶ 189; Ex. 2 at ¶ 11.

77. On October 28, 2020, Dr. Dreyer performed surgery on Patient I.L. ECF No. 26 at ¶ 184; Ex. 2 at ¶ 9.

78. On January 9, 2021, Dr. Dreyer completed his provider attestation for re-credentialing, in which he denied that there were any professional sanctions against his medical license or that he has been the subject of a review, challenges, or disciplinary action. Ex. 25.

79. On March 10, 2021, Dr. Dreyer performed what would be his final surgery at MultiCare.

**VI.** **In March 2021, DOH Suspends Dr. Dreyer, At Which Time MultiCare Learns For The First Time Of DOH Investigation**

80. On March 5, 2021, the DOH filed a Statement of Charges against Dr. Dreyer, which provided Dr. Dreyer an opportunity to respond to the charges. ECF No. 26 at ¶ 82; Ex. 5.

81. One week later after filing its Statement of Charges and before Dr. Dreyer submitted any response thereto, on Friday, March 12, 2021, the DOH made *ex parte* findings, based on Dr. Dreyer's conduct at Providence between August 2014 and January 2016, that Dr. Dreyer posed a present threat to public health and safety and thus "summarily restricted" Dr. Dreyer "from performing spine surgeries" pending further proceedings. Ex. 26 at 2, 3.; *see*

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 22

123221794.1 0023502-00322

ECF No. 26 at ¶ 83.

82. On Monday, March 15, 2021, MultiCare learned for the first time that the DOH had summarily restricted Dr. Dreyer's license. *See* Ex. 27.

83. That same day, Dr. Swanson contacted Dr. Dreyer to inform Dr. Dreyer that MultiCare was placing him on administrative leave. *See* Ex. 27.

84. The following day, March 16, 2021, MultiCare confirmed to Dr. Dreyer by letter that MultiCare was placing him on administrative leave effective immediately, and until further notice that he could not provide patient care ***in any manner***. Ex. 27.

85. On March 22, 2021, the DOH issued a Corrected Statement of Charges against Dr. Dreyer. *See* Ex. 28 at 3, ¶ 1.1.

86. On March 25, 2021, Dr. Dreyer responded to the original Statement of Charges. *See* ECF No. 26 at ¶ 84.

87. On March 25, 2021, Dr. Demakas signed a declaration attesting: "In the retrospective and prospective reviews of Dr. Dreyer's cases that I have personally performed, I did not observe concerning or substandard care based upon the information that was available to me at the time." Ex. 14 at ¶ 14; *see* ECF No. 26 at ¶ 84.

88. Dr. Demakas' Declaration further explained the scope of his personal review:

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 23

123221794.1 0023502-00322

In addition to undergoing a focused provide review, beginning in February 2020 and over a period of several months thereafter, I engaged in a concurrent review and surgical oversight of planning surgical cases performed by Dr. Dreyer for the purpose of reviewing surgical options and planning surgical services …. I reviewed cases that Dr. Dreyer had performed on an emergent basis retrospectively. I continued to periodically perform prospective reviews of Dr. Dreyer's planned surgical procedures until his recent suspension. In the past year Dr. Dreyer's cases have also been subject to multi-specialty reviews where the other specialists who also participated in the care of a particular patient (such as physiatry and neuro-radiological services) is also considered.

Ex. 14 at ¶¶ 11-14.

89. On April 2, 2021, Dr. Dreyer filed with the DOH his Answer to DOH's March 22, 2021, Corrected Statement of Charges. *See* Ex. 28 at 4, ¶ 1.2.

90. Dr. Demakas' declaration was submitted to the DOH on April 5, 2021. *See* Ex. 14 at 4.

91. On April 16, 2021, the DOH held a hearing regarding the allegations against Dr. Dreyer. Ex. 28 at 1.

92. On April 26, 2021, the DOH found that less restrictive prohibitions could prevent or avoid the danger to public safety and thus reinstated Dr. Dreyer's license, as suspended modified with restrictions, allowing him to conduct surgeries only if approved by two board-certified neurosurgeons actively licensed in Washington, "and at least one must work outside of [Dr. Dreyer's]

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 24

place of employment and have no financial interest in the institution." Ex. 28 at 5-6; *see* ECF No. 26 at ¶¶ 85-86.

## VII. Dr. Dreyer's Past Surgeries Pass An External Peer Review, And He Resigns From MultiCare

93. In November 2020, Dr. Swanson contacted The Greeley Company, LLC ("Greeley"), an independent healthcare consulting company that provides external peer reviews. *See* Ex. 29.

94. In early 2021, MultiCare engaged Greeley to perform a retrospective external peer review based on individual patient medical records and imaging for 20 of Dr. Dreyer's surgeries performed at MultiCare. *See* Ex. 30 at 2, ¶ 5; *see* Ex. 31 at 3; *see* ECF No. 26 at ¶ 142. .

95. On November 8, 2021, after its review of Greeley issued its External Peer Review Final Report, which concluded that the overall physician care is appropriate and none of the cases fell outside the spectrum of safe and appropriate care. *See* Ex. 31 at 1, 4-6.

96. On November 18, 2021, Dr. Dreyer resigned from MultiCare. *See* ECF No. 26 at ¶ 160.

## VIII. wRVU Compensation Model

97. On or before September 11, 2019, Dr. Dreyer proposed he move from a guaranteed flat salary to a production-based model of compensation, which

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 25

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

123221794.1 0023502-00322

was an alternative, pre-existing compensation model at MultiCare. Ex. 32; Ex. 33; ECF No. 26 at ¶¶ 54, 104, 110-11.

98. On October 1, 2019, MultiCare changed Dr. Dreyer's compensation method from a guaranteed flat salary to a production-based model known as the "Work RVU [Relative Value Units] Production Method as outlined in the MultiCare Rockwood Clinic Provider Compensation Manual." ECF No. 26 at ¶¶ 104, 112; Ex. 33.

99. Work Relative Value Units ("wRVUs") are a standard unit of measurement set by Medicare to establish value for health care procedures. ECF No. 26 at ¶ 55.

100. wRVUs for particular services and procedures are calculated based on a value assigned under the Medicare Physician Fee Schedule. ECF No. 26 at ¶ 55.

101. The number of wRVUs increases as the complexity of the procedure increases. ECF No. 26 at ¶ 55.

102. Like most wRVU-based compensation models, under MultiCare's production model, neurosurgeons were paid a set amount for each wRVU generated for a procedure or service they personally performed. ECF No. 26 at ¶ 55.

103. The wRVU compensation model is promulgated by CMS. ECF No. 26 at ¶ 55; 42 C.F.R. § 414.22. Since the implementation of the wRVU compensation

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 26

123221794.1 0023502-00322

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

model, CMS has proposed numerous amendments to the governing regulations that indicate the wRVU compensation metric is proper and permissible. *See, e.g.,* 83 Fed. Reg. 226 (Nov. 23, 2018).

104. CMS regulations explicitly permit using wRVUs as a method for calculating productivity compensation. 42 C.F.R. § 411.352(i)(2)(ii) ("A productivity bonus must be calculated in a reasonable and verifiable manner. A productivity bonus will be deemed not to relate directly to the volume or value of referrals if one of the following conditions is met: (A) The productivity bonus is based on the physician's total patient encounters or the relative value units (RVUs) personally performed by the physician.").

105. CMS recognizes that wRVUs generally represent fair market value because CMS determines the values of the three components of wRVUs—physician's work, practice expense, and malpractice insurance—based on current market conditions. *See, e.g.*, Revisions to Payment Policies Under the Physician Fee Schedule, 81 Fed. Reg. 80,170, at 80,172 (Nov. 15, 2016).

106. Recent healthcare industry publications state that the wRVU compensation model is both the standard practice and commonplace throughout the healthcare industry. *See generally*, *e.g.*, Rob Stone & Valerie Rock, E/M Changes Are Here—What Health Lawyers Need to Know about the

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 27

Compliance and Reimbursement Impacts, AHLA (Oct. 19, 2020) (noting wRVU methods are explicitly permitted under both the Anti-Kickback Statute and Physician Self-Referral Law (aka the Stark Law)), attached as Ex. 34; Michelle Frazier *et al.*, Physician Compensation—The Enforcement Trend That Never Seems To Go Out Of Style, AHLA Seminar Papers (Sept. 28, 2022) ("Compensation plans based solely on [wRVU] production have commonly been utilized in physician employment agreements for the past decade… The simplicity of administering wRVU-based plans, combined with the objectivity of the wRVU as a measure of work, allowed such compensation plans to become the preferred physician compensation model by 2020."), attached as Ex. 35.

## IX.   Providence's and Dr. Dreyer's Settlements

107. On March 15, 2022, Providence settled the *qui tam* action brought by Dr. Yam on behalf of the Government regarding Dr. Dreyer. ECF No. 26 at ¶ 74; Ex. 36.

108. In its settlement agreement with the Government and Relators, Providence admitted that its staff neurosurgeons, including Dr. Dreyer, "were paid compensation for each wRVU that they generated, with no cap on the wRVU-based compensation that could be earned," but makes no admission that such

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 28

123221794.1 0023502-00322

compensation was unlawful or improper and, in fact, the settlement agreement expressly states that "Providence does not concede that liability arises, under the False Claims Act or any other cause of action, from those facts." Ex. 36 at 2 (C) and 5(J); *see* ECF No. 26 at ¶¶ 71-72, 74.

109. On April 14, 2023, Dr. Dreyer, in settling the Government's allegations he violated the federal False Claims Act and Washington State False Claims Act, agreed to pay the Government $1,174,849 and agreed to be excluded from Medicare, Medicaid, and all other federal health care programs for nine years. ECF No. 26 at ¶¶ 157, 161. Ex. 37 at 3-4.

110. In his settlement agreement with the Government, Dr. Dreyer admitted that he "was paid compensation for each wRVU that he generated, with no cap on the wRVU-based compensation that could be earned," but makes no admission that such compensation was unlawful or improper and, in fact, expressly agreed that "this Settlement Agreement is not an admission of liability or fault." Ex. 36 at 2 (B) and 3(F); *see* ECF No. 26 at ¶ 159.

## X. Relators File The Instant *Qui Tam*

111. On April 13, 2022, Relators, Deanette Palmer, PhD and Richard Palmer, filed this case as a *qui tam* on behalf of the United States and the State of Washington. ECF No. 1; ECF No. 26 at ¶ 16.

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 29

**STOEL RIVES** LLP
**ATTORNEYS**
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

123221794.1 0023502-00322

112. On three separate occasions, the United States sought extensions of time to investigate and consider intervening in this case, each time stating that "the United States has been diligently investigating the relators' allegations." ECF No. 3 at 2; ECF No. 6 at 2; ECF No. 9 at 2.

113. On August 4, 2023, the United States elected to intervene. ECF No. 12; ECF No. 26 at ¶ 16.

114. On January 26, 2024, the United States and State of Washington jointly filed the Complaint in Intervention ("Complaint"). ECF No. 26.

## XI. Federal Or State Investigators Do Not Suspend Dr. Dreyer's Privileges In Any Way Until March 12, 2021

115. The DOH first received a complaint alleging Dr. Dreyer engaged at Providence in medically unnecessary surgeries and fraudulent billing practices in March 2019, but, based on the information in that complaint, it did not take emergency action. *See* ECF No. 26 at ¶¶ 75, 82-83; Ex. 5.

116. The DOH did not bring charges until March 5, 2021. ECF No. 26 at ¶ 82; Ex. 5.

117. The DOH did not take emergency summary action until March 12, 2021. ECF No. 26 at ¶ 83; Ex. 26.

118. The United States and State of Washington investigated for two years before they sought to intervene and settle in the Yam FCA case on January 13, 2022.

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 30

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

123221794.1 0023502-00322

*See* Ex. 17; Ex. 38.

119. The United States and State of Washington investigated this case for more than a year and a half before they filed their Complaint against MultiCare. *See* ECF Nos. 1, 3, 6, 9, 26.

120. On March 17, 2020, the DOJ issued a subpoena duces tecum to MultiCare seeking production of all diagnostic, surgical, or other medical records from Dr. Dreyer, including, but not limited to, any calculations of any compensation based on any wRVUs. Ex. 39.

121. Between April 17, 2020 and August 15, 2022, MultiCare produced documents in response to the DOJ Subpoena and responded in writing to specific questions from the DOJ. *See, e.g.,* Ex. 30.

122. Prior to filing the Complaint, the DOJ's investigation of this matter included review of documents produced by MultiCare; review of documents produced by Providence and others; review of allegations and materials provided by Dr. Yam in connection with their qui tam against Providence based on Dr. Dreyer's conduct; review of allegations and materials provided by Relators in this case, the Palmers, in connection with their qui tam against MultiCare based on Dr. Dreyer's conduct; interviews of current and former MultiCare and Providence employees; expert reviews of Dr. Dreyer's surgeries; review

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 31

123221794.1 0023502-00322

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

of Washington DOH materials and investigation into Dr. Dreyer; patient complaints at MultiCare and Providence; and analysis of MultiCare's billings to federal healthcare programs for Dr. Dreyer's services.

123. Under 42 C.F.R. § 405.371(a), Medicare payments to providers may be: (1) Suspended, in whole or in part, by CMS or a Medicare contractor if CMS or the Medicare contractor possesses reliable information that an overpayment exists or that the payments to be made may not be correct, although additional information may be needed for a determination"; or "(2) In cases of suspected fraud, suspended, in whole or in part, by CMS or a Medicare contractor if CMS or the Medicare contractor has consulted with the OIG, and, as appropriate, the Department of Justice, and determined that a credible allegation of fraud exists against a provider or supplier, unless there is good cause not to suspend payments."

124. Under 42 C.F.R. § 1001.701, HHS OIG has the authority to exclude an individual that has "(2) Furnished, or caused to be furnished, to patients (whether or not covered by Medicare or any of the State health care programs) any items or services substantially in excess of the patient's needs, or of a quality that fails to meet professionally recognized standards of health care," which determination OIG may make based on, *inter alia*, state or local

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 32

123221794.1 0023502-00322

licensing authorities or any other sources deemed appropriate by the OIG. 42 C.F.R. §§ 1001.701(a)-(b).

125. Under 42 C.F.R. § 1001.901(a), HHS OIG may exclude any individual that it determines has committed an act described in [42 U.S.C. § 1320a-7a], which provides for Civil Monetary Penalties for claims for items or services not provided as claimed, false or fraudulent claims, claims for services not medically necessary, among other things. 42 C.F.R. §§ 1001.901(a); 42 U.S.C. § 1320a-7a.

126. Under the Washington Revised Code, RCW 18.130.050(8) provides that the disciplining authority "has the following authority:" … "(8) To take emergency action ordering summary suspension of a license, or restriction or limitation of the license holder's practice pending proceedings by the disciplining authority. …," which summary suspension remains in effect until proceedings by the disciplining authority have been completed. RCW 18.130.050(8).

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 33

DATED:  May 6, 2024.

STOEL RIVES LLP


*/s/Anne Dorshimer*

ANNE M. DORSHIMER, WSBA No. 50363
anne.dorshimer@stoel.com
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, WA  98101
Telephone:  206.624.0900
Facsimile:  206.386.7500

WENDY OLSON (Admitted *pro hac vice*)
wendy.olson@stoel.com
Stoel Rives LLP
101 S. Capital Boulevard, Suite 1900
Boise, ID 83702
Telephone: 208.389.9000
Facsimile: 208.389.9040

THOMAS H BARNARD (Admitted *pro hac vice)*
tbarnard@bakerdonelson.com
Baker Donelson
100 Light Street, 19th Floor
Baltimore, MD 21202
Telephone: 410.862.1185

*Attorneys for Defendant MultiCare Health System*

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 34

123221794.1 0023502-00322

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2024, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system.  The NEF for the foregoing specifically identifies recipients of electronic service.

DATED:  May 6, 2024.

STOEL RIVES, LLP


*/s/Anne M. Dorshimer*
ANNE M. DORSHIMER, Bar No. 50363

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE - 35

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

123221794.1 0023502-00322